# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DANA BOYKIN,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLIANT ENERGY CORPORATION, INTERSTATE POWER AND LIGHT COMPANY and LISA McCULLOUGH,<br><br>    Defendants. | No. C04-3093-PAZ<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

This action for racial discrimination and slander is brought by the plaintiff Dana Boykin, an African American male, against his former employer Alliant Energy Corporation[1] ("Alliant") and a white female employee, Lisa McCullough.

On February 9, 2004, Boykin began working for Alliant as a Material Management Coordinator. McCullough was a coworker. Boykin resigned his position on January 11, 2005, by submitting the following letter to his supervisor:

> I would like to extend my thanks for a great job as my Supervisor; However, I have decided to pursue other employment opportunities. Effective 14-Jan-05, I am resigning from my position as Material Management Coordinator.
>
> Thank you again.

---

[1]The defendant Interstate Power and Light Company ("Interstate") is a subsidiary of Alliant. Alliant and Interstate initially claimed Boykin was employed by Interstate and not by Alliant, but they are no longer pursuing this claim. All references in this order to Alliant are to both Alliant and Interstate.

Boykin brought suit against Alliant and McCullough by filing a two-count petition in Cerro Gordo County, Iowa, District Court on December 28, 2004. In Count 1 of the petition, Boykin claimed that during his employment with Alliant, he was subjected to racially discriminatory conduct with respect to the terms, conditions, and privileges of his employment, in violation of Title 42 U.S.C. §1981. In Count 2, Boykin claimed McCullough slandered him by falsely stating to others that Boykin "had engaged in sexually harassing conduct by massaging her shoulders at work and sticking his finger in her ear." Boykin also claimed McCullough had slandered him by making false statements to management at Alliant that he was not performing the responsibilities of his job properly, and that as a result, two of Alliant's vendors were displeased with Alliant. The defendants removed the case to this court on December 30, 2004, and then filed answers generally denying the allegations in the petition. On March 7, 2005, upon the consent of the parties, the case was transferred to the undersigned magistrate judge.

On September 23, 2005, Alliant filed a motion for summary judgment on Count 1. (Doc. No. 8) On November 18, 2005, McCullough filed a motion for summary judgment on Count 2. (Doc. No. 20) Boykin resisted both motions, and on January 17, 2006, the court heard argument on the motions. The motions now are fully submitted.

## *I. ANALYSIS*

### *A. Racial Discrimination Claim*

On September 1, 2004, two representatives of Alliant's Human Resources Department met with Boykin about complaints of sexual harassment that had been made by McCullough. Boykin was advised McCullough had complained that he had engaged in sexually harassing conduct by massaging her shoulders and sticking his finger in her ear. Boykin denied this charge. Boykin also was questioned about an incident involving

2

McCullough and some golf carts. McCullough was standing near several golf carts that were being delivered to Alliant for use during a dedication ceremony. She complained that Boykin had walked by and stated, "What is this, the love connection?" Boykin claims he was referring to a television show called "The Love Connection," in which golf carts were utilized as part of the show. McCullough believed the comment was intended to imply a relationship between her and the man who was delivering the golf carts, who was standing near her.

On the evening of September 1, 2004, the plant manager came to Boykin's home and told him he was being placed on administrative suspension while McCullough's complaints were under investigation. Boykin later was advised that the suspension was with full pay and benefits. On September 9, 2004, the plant manager called Boykin and told him to return to work on September 10, 2004. Upon his return to work, Boykin was provided with the following "memorandum of discipline":[2]

---

[2] Also on September 10, 2004, a separate "memorandum of discipline" was issued to McCullough. Except for the first two paragraphs, it was identical to the memorandum provided to Boykin. The first two paragraphs of the memorandum issued to McCullough were as follows:

> On or around Friday, August 27, 2004, you advised me that a male co-worker had engaged in inappropriate behavior in the work place that you found to be offensive and that had a negative impact on your work environment. An investigation of this complaint was commenced on Wednesday, September 1, 2004, by personnel from the Human Resources Department. As a result of the investigation, we have taken appropriate action to ensure that no similar behavior will occur in the future.
>
> During the course of the investigation, we received information that you also engaged in conduct of an inappropriate nature in the work place. Specifically, we learned that you have engaged the male co-worker in question in discussions of a personal and sexual nature. You have admitted that you have engaged in such discussions.

3

On or around Friday, August 27, 2004[,] I received a complaint that you had engaged in inappropriate behavior in the work place that a co-worker found to be offensive and that had a negative impact on her work environment. Specifically, allegations were made that you engaged in inappropriate touching of a female co-worker in the workplace on several occasions and that you made several comments of an inappropriate nature to her.

An investigation of this complaint was commenced on Wednesday, September 1, 2004, by personnel from the Human Resources Department. Although you denied the allegations of inappropriate touching, you did admit to making comments to and having discussions of a personal and sexual nature with the co-worker. No definitive conclusion can be reached regarding the allegations of inappropriate touching raised in the complaint because it is a situation of one person's word against another. However, I am sufficiently concerned about the seriousness of the allegations, as well as your admissions regarding comments and discussions of a personal and sexual nature with this co-worker, that I am issuing this disciplinary action.

Alliant Energy Policy 102, Equal Employment Opportunity/No Harassment, prohibits conduct of a sexual nature which has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. Conduct that is prohibited by the policy includes, but is not limited, to inappropriate touching and comments of a sexual nature. You have been provided copies of this policy and have received training on it. You have been informed of your responsibility as an employee to comply with all aspects of the policy.

By your admission, you have engaged in conduct that is [in] violation of Policy 102. Not only is such conduct completely unacceptable in the work place, it demonstrates extremely poor

> judgment on your part and a failure to meet the high standards of conduct expected of someone within the organization.
>
> Due to the seriousness of this situation, you are being provided this written warning. Your continued employment will be conditioned upon demonstration of your ability to exercise good judgment on [a] consistent basis and to meet all of the following expectations:
>
>> * You must conduct yourself in a professional manner at all times.
>> * You must maintain appropriate communications and interactions with your fellow co-workers
>> * You must limit contact with the female co-worker referenced above to only business-related, job-specific interactions.
>> * You must adhere to the requirements of POL 102 and all other applicable company policies, procedures, and work rules.
>
> Please be aware that any further incidents of inappropriate conduct or a failure to meet the expectations outlined above will be grounds for immediate termination your employment.

Boykin admits that the only adverse action taken against him was the ten-day paid suspension and this "memorandum of discipline."

In *Borgren v. Minnesota*, 236 F. 3d 399, 409 (8th Cir. 2000), the court observed that "a plaintiff must demonstrate purposeful discrimination to support a § 1981 claim" (citing *General Bldg. Contr. Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed.2d 835 (1982), and that the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) is applicable to such a claim on summary judgment. Under the *McDonnell Douglas* analysis, to establish a prima facie case in a race discrimination claim, the plaintiff must show 1) he

is within the protected class, 2) he was qualified to perform his job, 3) he suffered an adverse employment action, and 4) non-members of his class, *e.g.*, white employees, were treated differently. *Jones v. Reliant Energy-ARKLA*, 336 F.3d 689, 691 (8th Cir. 2003) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)).

In the present case, there is no question that Boykin has shown he is within a protected class and he was qualified to perform his job. There is a serious question as to whether he has shown that non-members of his class were treated differently, but the court does not need to reach this question because the record contains nothing to show Boykin suffered an adverse employment action.

An adverse employment action "is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard." *Id.*

The Eighth Circuit Court of Appeals recently decided a case that is directly on point in the present analysis. In *Singletary v. Missouri Department of Corrections*, 423 F.3d 886 (8th Cir. 2005), the plaintiff was placed on administrative leave pending an investigation by the defendant. During the administrative leave, the plaintiff maintained his pay, grade, and benefits. Once the investigation concluded, he was promptly returned to his original position. The *Singletary* court held as follows:

> The Sixth Circuit has held that a woman who was placed on paid administrative leave pending the outcome of an investigation, and was restored to her position after the investigation, did not suffer an adverse employment action under Title VII. *Peltier v. United States*, 388 F.3d 984, 988-89 (6th Cir. 2004); *see also Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000) (holding that a police officer did not suffer any "adverse

6

> employment actions" by being placed on paid administrative leave when he retained his job and had not been demoted or transferred to less desirable position); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (concluding that employer's placement of employee on short administrative leave with pay to allow time for internal investigation of complaint in accordance with procedures was not an adverse employment action). We find the reasoning of [the] Fourth, Fifth, and Sixth circuits persuasive and hold that Singletary did not suffer an adverse employment action by being placed on administrative leave.

*Singletary*, 423 F.3d at 891-92.

Similarly, when Boykin was placed on paid administrative leave and was not demoted or transferred to a less desirable position, he did not suffer an adverse employment action. Thus, Alliant is entitled to summary judgment on Boykin's section 1981 claim for racial discrimination.

### B. *Slander Claim*

Boykin's slander claim is against McCullough only. He alleges she slandered him by (1) falsely stating to others that Boykin had engaged in sexually harassing conduct, and (2) making false statements to management that he was not performing the responsibilities of his job properly.

In her summary judgment motion, McCullough first argues that any statements made by her were true and, therefore, not slanderous. Of course, truth would be a defense to a claim of slander, but here, the truth of the statements made by McCullough is a contested factual matter that would have to be decided by a jury. She is not entitled to summary judgment on this ground.

7

McCullough also argues she is protected by a qualified privilege because the statements concerned "a matter in which the parties have an interest or duty, and [were] not restricted within narrow limits." Doc. No. 20, p. 2, citing *Marks v. Estate of Hartgerink*, 528 N.W.2d 539, 546 (Iowa 1995). "The law recognizes certain situations may arise in which a person, in order to protect his own interests or the interests of others, must make statements about another which are indeed libelous. When this happens, the statement is said to be privileged, which simply means no liability attaches to its publication." *Vojak v. Jensen*, 161 N.W.2d 100, 105 (Iowa 1968) A person has a qualified privilege "with respect to statements that are otherwise defamatory if the following elements exist: (1) the statement was made in good faith; (2) the defendant had an interest to uphold; (3) the scope of the statement was limited to the identified interest; and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only." *Barreca v. Nicholas*, 683 N.W.2d 111, 118 (Iowa 2004); *see Park v. Hill*, 380 F. Supp. 2d 1002, 1019-25 (N.D. Iowa 2005) (applying the test and finding that the privilege existed). The availability of the defense ordinarily is a legal question for the court; the question of whether the privilege has been abused is a question for the jury. *Id*. The privilege is abused, and thereby waived, if the statements were made with knowing or reckless disregard of their truth. *Id*., at 121-23.

Boykin's slander claims concern two separate sets of statement. The first set of statements concern McCullough's claim that Boykin had sexually harassed her. On this record, the court cannot find, as a matter of law, that any of the four qualified privilege elements are present here. Furthermore, even if the privilege did apply to these statements, there would be a factual issue for the jury as to whether the privilege was abused. Accordingly, McCullough's motion for summary judgment is denied as to this claim.

On the other hand, the statements McCullough made to her superiors that allegedly concerned Boykin's job performance fall squarely within the qualified privilege. This claim arises from an e-mail McCullough sent to her supervisor on September 13, 2004, in which she reported that two vendors were concerned about not getting paid. The e-mail did not mention Boykin's name. Boykin has submitted evidence that the vendors were not upset with him or the company about anything related to late payment of their invoices, and the vendors, in fact, were surprised that a problem had been reported.

Nothing in this record suggests that McCullough communicated her concerns other than in good faith and as a direct part of her job functions. The statements were limited in scope and were directed only to proper parties within the company. Furthermore, although Boykin has submitted evidence to show the statements were untrue, there is nothing in this record to suggest they were made with reckless disregard for the truth. In any event, these communications fall far short of even arising to the level of defamation. McCullough is entitled to summary judgment on this claim.

### C. *Supplemental Jurisdiction*

As a result of this ruling, only one claim remains in this case: the slander claim against McCullough based on her statements that Boykin had sexually harassed her. Because the court does not have original federal jurisdiction over this claim, the court must determine whether to retain jurisdiction over the case pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367. "It is the law of this circuit that the substantial investment of judicial time and resources in the case justifies the exercise of jurisdiction over the state claim, even after the federal claim has been dismissed." *Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir. 1994) (internal citations and quotation marks removed). Because this case is ready for trial in the immediate future,

and given the court's existing expenditure of the time and resources to move the case to trial, the court will retain jurisdiction over this claim.

## II. CONCLUSION

The court **grants** the motion for summary judgment filed by Alliant and Interstate, and **grants in part and denies in part** the motion for summary judgment filed by McCullough. This case will proceed to trial on March 13, 2006, as scheduled, on Boykin's single remaining claim against McCullough, to-wit: whether McCullough slandered Boykin in claiming he had sexually harassed her.

**IT IS SO ORDERED.**

**DATED** this 30th day of January, 2006.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT